UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-81294-CV-ROSENBERG
MAGISTRATE JUDGE REID

CARLOS ELTON ROBINSON,

      Petitioner,

v.

MARK S. INCH,[1] SEC'Y FLA. DEP'T OF CORR.,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I.    Introduction

This matter is before the Court upon a Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. [ECF No. 1]. *Pro se* Petitioner, Carlos Elton Robinson, is a convicted state felon challenging the constitutionality of his conviction and sentence for robbery with a firearm, a first-degree felony, in violation of Fla. Stat. § 775.087(2)(a), following a jury trial in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Case No. 2008CF011591A. [*Id*.]. This cause has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-2; and Rules 8 and 10 of the Rules Governing Section 2254 Cases. [ECF No. 11].

For its consideration of the Petition [ECF No. 1], the Undersigned reviewed the State's Response to the Court's Order to Show Cause along with its supporting exhibits, consisting of all

---

[1] At the time of Petitioner's filing, Julie L. Jones was the Secretary for the Florida Department of Corrections. Mark S. Inch is the current Secretary. The Clerk of Court is directed to change the name of the Respondent accordingly.

pertinent portions of the underlying criminal file in the State's case against Petitioner and transcripts of the relevant proceedings [ECF Nos. 7, 8, 9], and Petitioner's Reply. [ECF No. 10].

Upon review, and as further discussed below, the Undersigned recommends that the Petition be DENIED.

## II.    Claims

Construing the Petition liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises nine claims as follows:

1. The trial court abused its discretion in denying counsel's request for a continuance on June 10, 2010, where counsel stated he was not ready for trial because he had only been appointed in May 2010. [ECF No. 1 at 5]. This court error violated Petitioner's right to Due Process. [*Id*.].

2. The trial court erred in denying Petitioner's motion to suppress evidence because there was no probable cause for the search, in violation of Petitioner's Fourth Amendment rights. [*Id*. at 6].

3. Counsel was ineffective for failing to file a motion in accordance with Fla. R. Crim. P. 3.575 requesting a juror interview based on allegations of misconduct where Juror Michael Kennedy made impermissible contact with Petitioner during trial. [*Id*. at 6-7].

4. Counsel was ineffective for failing to object to the court's jury instruction that if the co-defendant was guilty then the jury had to answer "no" to actual possession of the firearm. [*Id*. at 8, 10].

5. Counsel was ineffective because during plea negotiations he advised Petitioner that if he was found guilty at trial, the judge would more than likely impose the 10-year mandatory minimum sentence. [*Id*. at 9]. Because of counsel's misadvice, Petitioner rejected an eight-year plea deal and was sentenced to 20 years in prison with a 10-year mandatory minimum sentence. [*Id*.].

6. Counsel was ineffective for failing to sever Petitioner's case prior to trial. [*Id*. at 10]. Petitioner was tried with his co-defendant pursuant to an information that did not identify which defendant actually possessed the firearm or if both possessed the firearm. [*Id*.].

7. Counsel was ineffective for failing to request a *Richardson*[2] hearing upon learning the State committed a discovery violation where the victim told the prosecutor there was another "show up" identification. [*Id*. at 11-12].

8. Counsel was ineffective for failing to object to the vindictive sentence imposed by the trial court. [*Id*. at 13]. The court knew Petitioner rejected an eight-year plea offer but sentenced him to 20 years with a 10-year minimum, which was higher than the plea offer, and did not explain the significant increase. [*Id*.].

9. Counsel was ineffective for failing to argue in the motion to suppress that police did not follow standardized criteria or procedure in finding the firearm in the car trunk. [*Id*. at 14].

In addition, Petitioner seeks an evidentiary hearing, a new trial, and any other relief to which he may be entitled. [*Id*. at 18.].

### III.   Relevant Procedural History

#### A.  *Information, Trial, and Direct Appeal*

Petitioner, along with his co-defendant, was charged by an amended Information with robbery with a firearm and actual possession of the firearm. [ECF No. 8-1 at 4].

1. <u>Motion for a Continuance of Trial and Motion to Suppress</u>

On several occasions, counsel moved for a continuance of Petitioner's trial because he was appointed on May 3, 2010, approximately six weeks before trial. [ECF No. 9-1 at 3, 24-27]. The state court denied the motion because the case had been pending more than two years, Petitioner's prior counsel represented him for a long period of time, all depositions were taken, the case had been continued multiple times over the years for various reasons, and Petitioner was now represented by his third counsel in the case. [*Id*. at 3, 5-6, 24-27]. Just prior to trial, on June 22,

---

[2] *Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971). A *Richardson* hearing is held to determine whether the State committed a discovery violation and, if so, whether the violation resulted in prejudice to the defendant's ability to prepare for trial. *See Brazell v. State*, 570 So. 2d 919, 921 (Fla. 1990).

2010, counsel renewed the motion for a continuance to find additional witnesses and to depose the officers involved in the first "show up." [ECF No. 9-3 at 15].

At the same time, counsel alleged that the State had committed a *Brady*[3] violation by failing to inform counsel that the victim had only identified Petitioner during a second "show-up." [ECF No. 9-3 at 3]. The State confirmed that the victim had volunteered new information that he was involved in two "show ups" and identified Petitioner after viewing the second group of males the police had detained. [*Id*. at 5]. Counsel filed a motion to suppress, challenging the admissibility of out-of-court identifications where the victim had traveled more than an hour for a second "show up" to identify Petitioner, who had been detained without a warrant. [ECF No. 8-1 at 7-13; *see also* ECF No. 9-3 at 5-6]. Counsel argued the late disclosure was prejudicial to Petitioner's case, and, again, sought a continuance in order to further investigate. [ECF No. 9-3 at 3-16]. The state agreed with the court that defense counsel conducted a full inquiry of the victim prior to trial. [*Id*. at 16]. The court determined the appropriate remedy was to permit an inquiry of the victim prior to trial and grant Petitioner a suppression hearing to permit the questioning of the officers outside the jury's presence. [*Id*. at 16, 81-82].

The victim testified that shortly after the robbery, he provided a description to police which included, among certain details, that the suspects were two thin, black males with dreads; one wearing shorts, one wearing pants. [*Id*. at 18]. According to the victim, the suspects presented to him at the first "show up" did not meet the initial description he gave police, as the suspects were heavier set and did not have dreads. [*Id*. at 19-21]. Trial commenced shortly thereafter.

During a bench conference, counsel objected to the presentation of firearm evidence and moved to suppress the firearm because Petitioner was not stopped for a traffic violation, there was

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the state must disclose all exculpatory evidence to the defense).

4

no arrest warrant nor consent to search the vehicle or a search warrant. [ECF No. 9-3 at 74-78]. The court sustained the objection and granted the motion to suppress the stop, everything that flowed from the stop, and second "show up" (when the victim identified Petitioner) throughout the course of trial. [*Id*. at 81, 168-191; ECF No. 9-4 at 34-84].

With regard to the events leading to Petitioner's detention, Deputy Weiss testified he initiated a BOLO pursuant to a probable cause affidavit based on the victim's statement to police that the suspects were two black males with dread locks, wearing black tee-shirts and shorts, and one, who was approximately 5'10'' tall, carried a firearm. [*Id*. at 168-172]. Weiss admitted to errors in the police report regarding the registration of the vehicle. [*Id*. at 175-177]. Weiss admitted there was no warrant for Petitioner's arrest. [*Id*. at 182].

Officer Waters testified he received a BOLO about an armed robbery which provided a tag number, a description of a maroon Dodge Charger, and a description of a suspect. [ECF No. 9-4 at 41-42]. Waters confirmed that the BOLO described the suspects as two black males, wearing dreads, dark tee-shirts, shorts, with "a large caliber semi-automatic." [*Id*. at 43]. Waters also testified that he recognized the description of the vehicle and he had previous encounters with Petitioner, knew where Petitioner lived, and drove by Petitioner's home to investigate further finding the car parked and empty. [*Id*. at 45-47]. Waters testified that he waited a few minutes until Petitioner left in the vehicle, followed the vehicle and effected a "traffic stop" per direct orders. [*Id*. at 48-49]. The "traffic stop" is alternatively called a "felony stop" based on the BOLO alerting a robbery with a firearm. [*Id*. at 49-50]. Because the vehicle was being towed, Waters conducted a "vehicle inventory" according to police procedure and found the firearm in the trunk. [*Id*. at 51-52]. According to Waters, the victim arrived and identified Petitioner. [*Id*. at 52-53]. Petitioner's counsel vigorously argued that there was no probable cause for the stop other than the hunch of a

5

police officer, the "show up" should be suppressed because Petitioner was handcuffed at the time, there was insufficient evidence for a felony traffic stop, Petitioner's detention was unlawful where officers detained him without a warrant or probable cause for more than an hour and a half for the "show up," and that the firearm should be suppressed as fruit of the illegal detention and search. [*Id*. at 67-71]. Counsel reminded the trial court that the motions to suppress were not in writing because the court had denied a motion to continue even though he was appointed to the case just 49 days earlier. [*Id*. at 71, 76].

The court determined there was reasonable suspicion for the stop based on a "very specific" vehicle and suspect description. [*Id*. at 77-78]. In addition, the court found the detention was not unreasonable and the "show up" was not unreliable based on five factors. [*Id*. at 79-81]. Moreover, the firearm was admissible pursuant to the doctrine of inevitable discovery. Thus, the court denied all motions to suppress. [*Id*. at 84; *see also* ECF No. 8-1 at 15]. Counsel renewed the suppression motion at the close of the State's case, which was again denied. [ECF No. 9-5 at 47, 55].

On June 24, 2010, the jury found Petitioner guilty of robbery with a firearm, as charged in the Information and that he was in actual possession of the firearm. [ECF No. 8-1 at 26-27]. Petitioner was adjudicated guilty and sentenced to twenty years in prison. [ECF No. 8-1 at 29, 31].

2. Direct Appeal

Petitioner appealed his conviction to the Fourth DCA in Case No. 4D10-4332. [ECF No. 8-1 at 33-34]. In his brief, Petitioner raised two issues: (1) the trial court abused its discretion in denying the motion for continuance and (2) the trial court erred in denying the motion to suppress because the search was not based on probable cause. [ECF No. 8-1 at 36-76]. On August 29, 2012, the Fourth DCA affirmed the conviction *per curiam* and without written opinion. *See Robinson v. State of Florida*, 104 So. 3d 1107 (Fla. 4th DCA 2012). Petitioner moved for a rehearing, which

was denied on November 14, 2012. [ECF No. 8-1 at 104-110, 112]. Petitioner did not further appeal; therefore, his conviction became final 90 days later, on February 12, 2013, when the time to appeal to the Supreme Court of the United States expired.

### B. Post-Conviction Proceedings

Petitioner filed a motion for post-conviction relief on October 7, 2013. [ECF No. 8-1 at 116-127]. The court denied the motion without prejudice because it was not signed under oath. [ECF No. 8-1 at 161-162]. Petitioner then filed an amended motion alleging the same. [ECF No. 8-1 at 164-176]. He raised six grounds for relief, identical to the claims raised in his federal habeas petition as Grounds 3 through 8. [*Id*. at 165, 167, 169-171, and 174].

While awaiting the State's response, on February 18, 2016, Petitioner, now represented by counsel, filed a supplemental Rule 3.850 motion. [ECF No. 8-1 at 13-234]. The motion re-alleged the initial six grounds and added a seventh: counsel failed to argue in the motion to suppress that the firearm was not found according to standardized criteria or routine, identical to the claim raised in his federal habeas petition as Ground 9. [*Id*. at 231]. The State asserted in its Response that the motion for post-conviction relief should be denied on the following grounds:

1. Counsel was not deficient because Petitioner did not inform counsel about the jury misconduct until after the verdict in his case and his testimony on the issue prior to the sentencing hearing was found by the state court to be "not believable." [ECF No. 8-1 at 288].

2. Counsel was not ineffective by not objecting to the way the court read the instructions because the court had wide discretion in instructing the jury and, according to Florida law, the jury instructions do not need to be literally given in each and every case. [*Id*. at 289].

3. The record refuted Petitioner's claim because it reflected the eight-year offer, that the offer remained open, and Petitioner was advised that he faced a maximum penalty of life in prison with a ten-year mandatory minimum sentence. Petitioner told the court he rejected the offer. [*Id*. at 289-290].

4. There is no absolute right to sever a trial per *McCray v. State*, 416 So. 2d 804 (Fla. 1982) and it is not appropriate where the defendant has an opportunity to fully cross-examine witnesses and where there is no confusing or improper evidence submitted to the jury, as in *Williams v. State*, 567 So. 2d 9 (Fla. 4th DCA 1990). [*Id*. at 290-291].

5. Under Florida law, it is the defendant's burden to demonstrate vindictiveness and defendant must show the trial judge participated in the plea negotiations, per *Redmond v. State*, 970 So. 2d 915 (Fla. 5th DCA 2007) and *Ortiz v. State*, 884 So. 2d 1086 (Fla. 3d DCA 2004). [*Id*. at 291-292].

6. The record refutes Petitioner's claim that counsel failed to seek a *Richardson* hearing where the court conducted the inquiry, allowed argument, and allowed counsel to question the victim outside the presence of the jury and prior to opening statements. [*Id*. at 293].

7. The claim of ineffective assistance of counsel as to failing to assert in the motion to suppress that the firearm was found in accordance with standardized criteria or routine was *untimely*. [*Id*. at 293].

The state court denied Petitioner's motion and adopted the State's reasoning. [ECF No. 8-3 at 108-109]. Petitioner filed a motion for reconsideration, which was denied. [ECF No. 8-3 at 112-115, 173-175]. He appealed only the denial of Grounds 1 through 6 to the Fourth DCA in Case No. 4D17-0911. [ECF No. 8-3 at 117-118, 120-169]. The Fourth DCA affirmed the denial of the Rule 3.850 motion *per curiam* and without written opinion on July 19, 2018. *See Robinson v. State of Florida*, 250 So. 3d 680 (Fla. 4th DCA 2018).

Petitioner timely filed the instant federal habeas petition on September 21, 2018. [ECF No. 1]. This Report follows.

## IV.   Standard of Review in § 2254 Cases

This Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). *See Abdul–Kabir v. Quarterman*, 530 U.S. 233, 246 (2007); *see also Davis v. Jones*, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). "AEDPA limits the scope of federal habeas review of state court judgments." *Pittman v. Sec'y, Fla. Dep't of Corr.*, 871 F.3d 1231, 1243 (11th Cir. 2017). "'The purpose of

AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)) (quotation marks omitted)).

The Court may grant habeas relief from a state court judgment only if the state court's decision on the merits of the issue was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). In that respect, the Eleventh Circuit has made clear that:

> [a] state court's decision rises to the level of an unreasonable application of federal law only where the ruling is 'objectively unreasonable, not merely wrong; even clear error will not suffice.' *Virginia v. LeBlanc*, 582 U.S. ___, ___, 137 S. Ct. 1726, 1728, 198 L.Ed.2d 186 (2017) (*per curiam*) (quoting *Woods v. Donald*, 575 U.S. ___, ___, 135 S. Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (*per curiam*)). This standard is "meant to be" a difficult one to meet. *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786, 178 L.Ed.2d 624 (2011).

*Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017).

Federal courts "must also presume that 'a determination of a factual issue made by a State court [is] correct,' and the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Morrow v. Warden*, 886 F.3d 1138, 1147 (11th Cir. 2018) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting *Bui v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003)).

More recently, the Supreme Court of the United States in *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018), concluded there is a "look through" presumption in federal habeas corpus law, as silence implies consent. *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-1606 (2016) (*per*

*curiam*) (adopting the presumption that silence implies consent but refusing to impose an irrebutable presumption). Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation, the Supreme Court of the United States instructs that:

> [T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

*Wilson*, 138 S. Ct. at 1192. In other words, if the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* However, if the relevant state-court decision on the merits is not accompanied by a reasoned opinion, because it was summarily affirmed or denied, a federal court "should 'look through' the unexplained decision to the last state-court decision that does provide a relevant rationale." *Id*.

Moreover, the Supreme Court of the United States has repeatedly admonished that "[t]he petitioner carries the burden of proof" and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington*, 562 U.S. at 102-103 (quotation marks omitted)); *see also Rimmer*, 876 F.3d at 1053 (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error).

## V.     Applicable Law

### A.   Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668,

687, 694 (1984). If a movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *Id.* at 697 (explaining a court need not address both prongs if the movant makes an insufficient showing on one of the prongs).

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). With regard to the prejudice requirement, the movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694.

For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *see also Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 369 (quoting *Strickland*, 466 U.S. at 687).

It is well-settled that matters of trial strategy do not amount to ineffectiveness. We begin with the premise that "under the circumstances, the challenged action[s] might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "Counsel is 'strongly presumed' to make decisions in the exercise of professional judgment. That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citation

omitted). "Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Id.* Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

## VI.    Discussion

### A. *Claim 1 – The Trial Court's Denial of the Motion for Continuance of Trial Was Not a Due Process Violation.*

In **Claim 1**, Petitioner claims his Due Process rights were violated when the trial court denied counsel's request for a continuance on June 10, 2010, because counsel was not ready for trial having been appointed approximately five weeks before trial. [ECF No. 1 at 5]. The State asserts the claim is procedurally barred because counsel did not preserve the objection and the claim otherwise fails on the merits. [ECF No. 7 at 11-17]. In his Reply, Petitioner contends that the denial of the motion for a continuance was an abuse of discretion by the trial court and denied him the opportunity to investigate all parties involved in the first "show up" involving different suspects. [ECF No. 10 at 2-3]. Petitioner's claim fails.

Petitioner's claim is exhausted. He raised the claim on direct appeal. [ECF No. 8-1 at 66-70]. The State argued the claim was waived or, alternatively, failed on the merits. [ECF No. 8-1 at 88-93]. The Fourth DCA affirmed without written opinion; therefore, it may be presumed the state court adjudicated the claim on the merits. *See Harrington*, 562 U.S. at 99.

Where there is no reasoning, it is Petitioner's burden to show there is no reasonable basis for the court's decision. *Id.* at 98. Thus, this claim is presumptively subject to § 2254(d)'s additional limitation -- a deferential standard of review. *Id.* at 99-100. In this case, the reasoning

at the state trial court level is presumably the basis for the appellate court's affirmance. *See Wilson*, 138 S. Ct. at 1192-94.

Although "the denial of a continuance request can in some cases amount to a violation of this due process right to counsel…not every denial of a request for a continuance is a denial of due process." *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005) (internal citations omitted). "Broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).

A court should consider "a number of factors, including: (1) the length of the delay; (2) whether the counsel who becomes unavailable for trial has associates prepared to try the case; (3) whether other continuances have been requested and granted; (4)  the inconvenience to all involved in the trial; (5) whether the requested continuance is for a legitimate reason; and (6) any unique factors." *Baker*, 432 F.3d at 1248. It cannot be said that given the circumstances of Petitioner's case that the denial of the continuance was so arbitrary it violated his Due Process rights.

Here, as narrated above, prior to trial, counsel moved for a continuance of Petitioner's trial because he was appointed approximately six weeks before the beginning of trial and because he, generally, "was not ready" and "there [were] things that [had] not been done in the case." [ECF No. 9-1 at 3, 5]. The court denied the motion because the case was more than two years old, prior counsel represented Petitioner for a long period of time, and all depositions were taken. [*Id*. at 3, 5-6]. Closer to trial, counsel renewed the motion; and the court further explained that the case had been continued at least nine times over the years and Petitioner was now represented by his third counsel in the case. [ECF No. 9-1 at 24-27]. Just before trial, counsel again renewed the motion to

find additional witnesses and to depose the victim and officers involved in the first "show up." [ECF No. 9-3 at 15, 81-82].

Despite the prior denial of the motion, the court provided alternative remedies: (1) it placed Petitioner's case behind other cases on the docket [ECF No. 9-1 at 8]; (2) permitted counsel a pre-trial inquiry of the victim [ECF No. 9-3 at 16-22]; and (3) permitted a suppression hearing challenging the stop, detention, and firearm, and permitted counsel to question the officers as to the first "show up" in the absence of the jury. [*Id*. at 74-82]. Counsel reminded the court of his denied request for a continuance; and the court acknowledged the same. [ECF No. 9-4 at 71]. These factors, when considered together, provides reasonable support for the denial of counsel's request for a continuance. *See Baker*, 432 F.3d at 1248.

The State court's decision is not contrary to, or an unreasonable application of, clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). The state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington*, 562 U.S. at 101-102. Accordingly, **Claim 1** should be DENIED.

B.  *Claim 2 – Whether the Trial Court Erred in Denying the Motion to Suppress is Not a Cognizable Claim in a Federal Habeas Proceeding.*

In **Claim 2**, Petitioner claims the trial court erred in denying Petitioner's motion to suppress evidence because there was no probable cause for the search, in violation of Petitioner's Fourth Amendment rights. [ECF No. 1 at 6]. The State asserts the claim is procedurally barred or, alternatively, should be denied on the merits. [ECF No. 7 at 17-21]. Petitioner's claim fails.

Petitioner's claim is barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976), which held that federal courts have no authority to review a state court's application

14

of Fourth Amendment principles in habeas corpus proceedings unless the petitioner was denied a full and fair opportunity to litigate his claims in state court. *See Peoples v. Campbell*, 377 F.3d 1208, 1224-26 (11th Cir. 2004) (holding that *Stone* precluded consideration on habeas review of claim alleging arrest lacked probable cause); *see also Bradley v. Nagle*, 212 F.3d 559, 564 (11th Cir. 2000) (holding that *Stone* precluded consideration of a claim alleging an invalid search).

Here, as narrated above, counsel challenged the validity of the stop, Petitioner's detention, and all evidence flowing from it. Counsel argued the motion to suppress, which was followed by a hearing on the Fourth Amendment issues. The trial court denied the motion. Furthermore, the appellate court rejected this claim when it affirmed his conviction.

In sum, Petitioner was not deprived of a full and fair opportunity to litigate this claim in state court. Moreover, there is no indication that the state court's determination was based on erroneous factors. Accordingly, the Court may not review this claim. *See Stone*, 428 U.S. at 494.

Even if the claim were not barred, the Court presumes that the appellate court adjudicated the claim on the merits; and, as such, the state court decision warrants deference, pursuant to *Wilson*. The state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Therefore, **Claim 2** does not warrant relief and should be DENIED.

### C. *Claim 3 – Counsel Was Not Ineffective for Failing to Request a Juror Interview for Misconduct because Counsel Was Unaware of the Improper Contact Until After the Verdict was Rendered.*

In **Claim 3**, Petitioner claims counsel was ineffective for failing to file a motion in accordance with Fla. R. Crim. P. 3.575 requesting a juror interview based on allegations of misconduct where Juror Michael Kennedy made impermissible contact with Petitioner during trial.

[ECF No. 1 at 6-7]. The State asserts that the claim fails on the merits as it is controverted by the record. In his Reply, Petitioner contends (1) the court misapplied *Strickland*; (2) that on the day of the verdict, he provided the information about the juror to counsel but counsel failed to file the proper motion under Fla. R. Crim. P. 3.575; and (3) the trial court should have granted him an evidentiary hearing on this claim. [ECF No. 10 at 3-5]. In his reply, Petitioner improperly raises a new allegation with no factual details:  jury misconduct "in the form of a bribe." [*Id*. at 4].

In Florida, "[a] party who has reason to believe that the verdict may be subject to legal challenge *may* move the court for an order permitting an interview of a juror or jurors to so determine." Fla. R. Crim. P. 3.575 (emphasis added). However, in order for counsel to have "reason to believe" that grounds for a legal challenge to the verdict exists, there should be a "reason to believe that one or more of the jurors violated their oath and disregarded the instructions of the court." *Bullard v. State*, 324 So. 2d 652, 654 (Fla. 1st DCA 1975).

"Any jury inquiry is limited to allegations which involve an overt prejudicial act or external influence, such as a juror receiving prejudicial nonrecord evidence or an actual, express agreement between two or more jurors to disregard their juror oaths and instructions." *Reaves v. State*, 826 So. 2d 932, 943 (Fla. 2002). Juror interviews are not permitted relative to any matter that inheres in the verdict itself and relates to the jury's deliberations.  *Id*. A lone juror's attempt to discuss the defendant's guilt prematurely is insufficient to warrant juror interviews. *Id*.

Here, counsel filed a motion for a new trial to include claims of juror misconduct for impermissible contact with Petitioner. [ECF No. 9-7 at 3-4]. At a hearing on the claim, Witness Miller testified that one of the individuals on the jury came into contact with her and Petitioner before the verdict was rendered and before trial was over and asked them how they were, wished Petitioner "good luck" at trial, and made other comments. [*Id*. at 5-8]. Miller testified the juror

followed Petitioner into the restroom and that Petitioner commented they had a conversation in the bathroom. [*Id*. at 8]. Miller testified that, after trial was over, Petitioner and the juror had another conversation in the parking lot, but neither Miller nor Petitioner informed counsel of the encounters until the day of the verdict. [*Id*. at 8-16]. Petitioner testified that the juror spoke with him in the restroom, asked how he was doing, if he was scared but could not "really quote exactly what [the juror] said." [*Id*. at 18-19]. Petitioner testified that the juror told him he "will be all right," "just pray," and asked him if he committed the crime. [*Id*. at 19-20]. Petitioner testified that the juror told him half of the jurors were on Petitioner's side. [*Id*. at 22]. Petitioner testified he did not tell anyone about the encounter because he was afraid of getting into trouble and did not remember what day it occurred but knew it was before the verdict. [*Id*. at 23-24]. Petitioner described the second incident in the parking garage and claimed he was not listening but remembered the juror had commented half of the jury was on Petitioner's side. [*Id*. at 26]. Petitioner explained that after the parking garage incident he spoke to a deputy about the encounters in a hypothetical way and was told to report it to his attorney. [*Id*. at 27-30]. Petitioner testified he informed counsel about the encounters after the verdict was read but not the same day and "probably that following day, or the day after." [*Id*. at 34-38]. Petitioner admitted he changed his mind because he was found guilty. [*Id*. at 39]. Counsel offered that the juror was likely Mr. Kennedy and argued that there was impermissible contact which tainted the verdict. [*Id*. at 40]. Co-defendant's counsel stated that, after the verdict, Petitioner and his mother had asked him for advice regarding what should be done when a juror makes contact with a witness; and he informed Petitioner's mother that his counsel should be notified immediately. [*Id*. at 51-58].

The state court confirmed that there was no Rule 3.575 motion filed. [*Id*. at 69]. The state court also determined that the impermissible contact was caused by Petitioner, who told the juror

he was not guilty of the crime. [*Id*. at 70]. The court further determined that although the juror was not interviewed, based on the witness testimony, the alleged contact was positive. [*Id*.]. Moreover, if counsel knew about the contact then he "absolutely had an obligation" to file a Rule 3.575 motion. [*Id*. at 71]. Yet, because Petitioner knew the contact was wrong, knew what to do about it because he was told to inform his attorney but decided not to, the "reasonable inference" is that Petitioner did nothing because the juror promised him a good result. [*Id*. at 71-72]. Petitioner only changed his mind when he received the guilty verdict. [*Id*. at 72]. The state court found Petitioner's testimony "not believable" and for this, and several other reasons, ruled that there was no basis for a new trial.

Petitioner cannot establish that counsel was deficient for failing to file a Rule 3.575 motion with the trial court. Although counsel did not file the motion because he did not know about the alleged contact, because Petitioner withheld the information until after the verdict, and for at least one or two days afterward despite having been advised to the contrary. Moreover, the testimony demonstrated that the encounter between Petitioner and the juror is precisely the type of encounter that is insufficient to warrant a juror interview. *See Reaves*, 826 So. 2d at 943.

Even if counsel were deficient, Petitioner cannot demonstrate prejudice. Counsel presented the matter to the court at the earliest possible opportunity and presented supporting witnesses (including Petitioner). Petitioner alleged that one juror attempted to discuss guilt with him prematurely. This contention does not involve any agreement among the other jurors to disregard their oaths and ignore the law, nor does it imply that the jury was influenced by external sources or improper material. *See Reaves*, 826 So. 2d at 943.

The state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts

in light of the evidence presented. Petitioner cannot satisfy either prong of *Strickland*, **Claim 3** should be DENIED.

Furthermore, Petitioner's attempts to raise a new claim in his Reply that there was jury misconduct "in the form of a bribe" without any factual support. First, courts regularly deny claims on the basis that the allegations are too general, too conclusory, or too vague to warrant relief. *See, e.g., Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012). Denying on this basis is appropriate because, unlike the "notice pleading" standard authorized under Fed. R. Civ. P. 8, a "heightened pleading" requirement exists in § 2254 and § 2255 proceedings. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). To meet this heightened pleading standard, of course, the habeas petition or motion to vacate must be specific on factual matters. *See id*. Bare, conclusory, allegations of ineffective assistance do not satisfy *Strickland*. *See Boyd v. Comm'r, Ala. Dep't of Corr.,* 697 F.3d 1320 (11th Cir. 2012); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

Moreover, a reply to a State's answer is not a proper vehicle for raising new claims or arguments not raised in the initial petition. *See* R. 2(c)(1) Rules Governing Section 2254 Cases ("The petition must . . . specify all grounds for relief available to the petitioner."). Accordingly, the Court should not consider Petitioner's claim.

### D. Claim 4 – Counsel Was Not Ineffective for Failing to Object to the Jury Instruction Because He is Not Required to Raise Meritless Objections.

In **Claim 4**, Petitioner claims that counsel was ineffective because he did not object to the jury instruction that if they found co-defendant guilty then the jury had to answer "no" to actual possession of the firearm. [ECF No. 1 at 8]. The State asserts that the instruction was proper instruction because the State's theory was that Petitioner was in actual possession of the firearm

and co-defendant was charged as a principal. In his Reply, Petitioner contends that the jury instruction prejudiced him because he and his co-defendant are similar in appearance and a less prejudicial approach could have been employed, though he does not assert what that approach would be. [ECF No. 10 at 5-6].

Under Florida law, the trial court's decision to give or withhold a jury instruction is reviewed for abuse of discretion. A trial court has wide discretion in instructing the jury, and the court's decision regarding the charge to the jury is reviewed in state court with a presumption of correctness. *See Card v. State*, 803 So. 2d 613, 624 (Fla. 2001) (citing *James v. State*, 695 So. 2d 1229, 1236 (Fla. 1997)); *see also Parker v. State*, 873 So. 2d 270, 294 (Fla. 2004) (noting that trial court's decision to give or deny a jury instruction would be reviewed for abuse of discretion). To establish ineffective assistance of counsel for failing to object to a jury instruction, the Petitioner must show that the instruction was improper; that a reasonably competent attorney would have objected to the instruction; and that the failure to object was prejudicial. *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir.1988) (citing *Strickland*, 466 U.S. at 686-87). Moreover, where "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697.

Here, the amended Information charged Petitioner with "actual possession" of a firearm. [ECF No. 8-1 at 4-5; *see also* State's closing argument outlining its theory at ECF No. 9-6 at 7-8]. The State's case presented Petitioner as the one in actual possession of the firearm and the codefendant as a principal to the robbery. The victim testified that he was robbed at gun point by two men, one of whom pressed the gun at the victim's side; and he identified Petitioner as the gunman and the codefendant as the second man involved who stood behind Petitioner. [ECF No. 9-3 at 46-73, 85-86]. At the "show up," and when presented with the photo line-up, and in court,

20

the victim identified Petitioner as the one in actual possession of the gun. [*Id*.]. The defensive strategy for both defendants was that they were together on the night of the robbery but were conducting errands for family, visiting friends, and conversing with friends on the phone.[4] Although there were no objections to the jury instructions, there was reasonable discussion from codefendant's counsel, the State's attorney, and the court that because the codefendant was charged only as a principal and no evidence was presented that he was in actual possession, then, the jury must answer "no" to the question of whether he was in actual possession of the firearm. [ECF No. 9-6 at 1024-1025]. This is a correct instruction.

In closing argument, counsel offered that the victim misidentified Petitioner and the codefendant; and Petitioner and the codefendant had an alibi. [*Id*. at 31-43]. The court instructed the jury that if it found Petitioner committed robbery with a firearm (and other lesser offenses), they also must determine whether he was in "*actual possession* of the firearm" and that it may find "one or both [defendants] guilty or not guilty. However, your verdict as to one defendant must not effect your verdict as to the other." [ECF No. 9-6 at 1020-1022 (emphasis added)]. The court's instruction to the jury as to his codefendant included, "the attorneys have all agreed and the Court now instructs you, that as to the [co]defendant...if you find him guilty of robbery with a firearm, you must answer...no" that the codefendant was not in actual possession of a firearm. [ECF No. 9-6 at 1040-1041].

The jury found Petitioner guilty of robbery with a firearm as charged in the Information and that he committed the robbery in *actual* possession of a firearm. [ECF No. 9-6 at 1061]. There was nothing in the record to support an objection to the jury instruction. Counsel is not deficient for failing to raise meritless objections. Moreover, Petitioner cannot demonstrate prejudice because

---

[44] *See* testimony of defense witnesses Sharon Robinson [ECF 9-5 at 65-100], Tilanesha Manderville [*Id*. at 121-131], Shaterrica Miller [*Id*. at 132-149], and Janice Morgan [*Id*. at 152-175].

an objection would not have changed the outcome where there was no testimony or evidence presented at trial that codefendant was in actual possession of the firearm.

The state courts determined that ineffective assistance under *Strickland* had not been shown. The jury was, as the trial court found, fully instructed with the proper jury instructions, which were clear. The question is not whether the state courts were correct in finding ineffective assistance was not proven but whether the determination was objectively unreasonable in the light of the record, which is a higher threshold. Petitioner has failed to show that the state court's adjudication of this claim resulted in a decision that is contrary to or involved an unreasonable application of *Strickland* or other federal law. Nor has he shown that the decision was based on an unreasonable determination of the facts as presented in the state court proceeding. **Claim 4** should be DENIED.

### E.  Claim 5 – Counsel Was Not Ineffective for Misadvice of Plea Because the Claim is Controverted by the Record.

In **Claim 5**, Petitioner claims counsel was ineffective because during plea negotiations he advised Petitioner that if he was found guilty at trial, the judge would more than likely impose the 10-year mandatory minimum sentence. [ECF No. 1 at 9]. Petitioner states that because of counsel's misadvice, he rejected an eight-year plea deal and was sentenced to 20 years in prison with a 10-year mandatory minimum sentence. [*Id*.]. The State asserts Petitioner's claim is refuted by the record. [ECF No. 7 at 24]. In his Reply, Petitioner raises an altogether different claim:  that, during plea negotiations, counsel promised Petitioner he would not receive more than 10 years in prison if he proceeded to trial. [ECF No. 10 at 6-7]. Petitioner admits that the trial judge advised him of the maximum sentence he could receive if he was convicted and that he spoke with counsel prior to making the decision. [*Id*. at 7]. Petitioner's claim is refuted by the record.

First, counsel did not participate in plea negotiations because he was the third counsel appointed to Petitioner's case. Before trial, the court inquired whether there was a plea offer in Petitioner's case; and the State confirmed an eight-year plea offer without a mandatory minimum sentence. [ECF No. 9-1 at 30]. Counsel informed the court that this was the first time he learned about the offer; and Petitioner confirmed for the court that his prior counsel advised him of the offer. [*Id*. at 31]. The court directed counsel and Petitioner to discuss the plea offer. [*Id*. at 31-32]. Shortly thereafter, under oath, Petitioner stated he had the opportunity to discuss the plea with counsel, understood the maximum penalty was life in prison with a ten-year mandatory minimum sentence, and understood the meaning of the mandatory minimum sentence. [*Id*. at 33-34]. Petitioner also confirmed he understood that accepting or rejecting a plea was his decision alone. [*Id*. at 34]. Petitioner outright rejected the offer. [*Id*. at 35]. Counsel gave sound advice that Petitioner would be subject to the mandatory minimum if found guilty.

The state court's application of *Strickland* is not contrary to federal law nor is an unreasonable determination of the facts. Accordingly, **Claim 5** should be DENIED.

Moreover, for the same reasons stated in Claim 3, Petitioner may not raise claims in his Reply. Accordingly, Petitioner's claim that counsel promised him he would not receive more than 10 years is not reviewable.

F.  *Claim 6 – Counsel Was Not Ineffective for Failing to Sever Petitioner's Case Because Trial Strategy Does Not Amount to Ineffectiveness.*

In **Claim 6**, Petitioner claims counsel was ineffective for failing to sever his case prior to trial. [ECF No. 1 at 10]. Petitioner claims he was tried with his co-defendant pursuant to an information that did not identify which defendant actually possessed the firearm or if both possessed the firearm. [*Id*.]. The State asserts there is no constitutional claim and is not cognizable and, alternatively, fails on the merits because there are tactical reasons why counsel would not

23

want to file a motion to sever; and trial strategy does not amount to ineffectiveness. [ECF No. 7 at 25-26]. In his Reply, Petitioner contends that if counsel severed his case from his co-defendant he could have been acquitted or been convicted as a principal. [ECF No. 10 at 8]. Petitioner seems to argue that there was confusion with the jury instructions (as he raises in Claim 4) and that supports a severance of the trial. [*Id*. at 7-8].

The State is incorrect that Petitioner has not presented a cognizable claim. Petitioner clearly communicates within his Rule 3.850 motion, on direct appeal of the denial, and in the instant proceeding an ineffective assistance of counsel claim for failure to sever as a Sixth- and Fourteenth Amendment violation. [ECF No. 8-1 at 170-171]. While the State in its response to Petitioner's 3.850 motion relied on state law to argue why severance was not appropriate in Petitioner's case, it clearly presented "defendant is unable to satisfy *Strickland*." [ECF No. 8-1 at 209-291]. The state court denied the claim for the reasons in the State's response; and the Fourth DCA affirmed the denial on appeal. Accordingly, Petitioner's claim is cognizable in the instant habeas proceeding. Still, Petitioner's claim fails.

Florida Rule of Criminal Procedure 3.150 details the joinder of offenses and provides as follows:

> Two or more offenses that are triable in the same court may be charged in the same indictment or information in a separate count for each offense, when the offenses, whether felonies or misdemeanors, or both, are based on the same act or transaction or on 2 or more connected acts or transactions.

Fla. R. Cr. P. 3.150(a). A defendant may move to sever joined offenses upon a showing that: (a) severance is necessary to achieve a fair determination of guilt or innocence; or (b) two or more offenses are improperly charged in single information. *See* Fla. R. Crim. P. 3.152(a)(2). Joinder is proper if Petitioner's offenses are connected in some "significant way." *Ellis v. State*, 622 So. 2d 991, 1000 (Fla. 1993).

24

There is no general right to a separate criminal trial. *See Zafiro v. United States*, 506 U.S. 534 (1993). The United States Supreme Court has held that severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Under federal law, "[t]he test for antagonistic defenses requires that the defenses be irreconcilable or mutually exclusive: the jury, in order to believe one defendant's defense must necessarily disbelieve the antagonistic defense of another defendant." *United States v. Rocha*, 916 F.2d 219, 231 (5th Cir. 1990) (citations omitted). Thus, antagonistic defenses justify severance only when the defenses are "antagonistic to the point of being mutually exclusive or irreconcilable, so that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Sandoval*, 847 F.2d 179, 183 (5th Cir. 1988) (citation omitted); *see also Zafiro*, 506 U.S. at 539-40 (mutually antagonistic defenses are not prejudicial *per se* and question of severance is left to sound discretion of district court). Moreover, "[c]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Chandler*, 218 F.3d at 1314 (citing *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)).

Here, Petitioner and his co-defendant were tried together and presented defenses that were not mutually exclusive. Counsel presented a misidentification defense (particularly since victim appeared for two "show ups") – that two other men committed the robbery – as well as an alibi defense. [ECF No. 9-5 at 48-50, 64-65; ECF No. 9-6 at 31-37, 40-44, 46]. Petitioner's mother, sister, and friend testified on his behalf providing an alibi. [ECF No. 9-5 at 69-76, 121-126, 133-145]. Petitioner and codefendant chose not to testify. [*Id.* at 150, 178]. Counsel for the codefendant maintained a similar defense adding that Petitioner and the codefendant did not look similar as

victim maintained and presented an alibi defense that the two were together at another location. [*See* ECF No. 9-5 at 153-175; ECF 9-6 at 50 (Janice Morgan testimony)]. The jury found the co-defendant guilty of robbery with a firearm but not in actual possession of the firearm and found Petitioner guilty of robbery with a firearm while in actual possession of the firearm. [ECF No. 9-6 at 144-145].

Neither the defenses nor the instructions prevented the jury from making a reliable judgment. The fact that counsel did not file a motion to sever from codefendant suggest a deliberate trial strategy rather than deficient performance. Both counsels presented mutually supportive misidentification and alibi defenses. The record supports the state post-conviction court's findings, affirmed on appeal, that the decision not to seek severance of the charges constituted a reasonable trial strategy. *See, e.g., Pardo v. Sec'y, Fla. Dep't of Corr.*, 587 F.3d 1093, 1103-04 (11th Cir. 2009). Accordingly, counsel cannot be found deficient; therefore, Petitioner fails to satisfy *Strickland*. More importantly, Petitioner has not shown that the state courts' rulings resulting in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, **Claim 6** should be DENIED.

### G.  Claim 7 – Counsel is Not Ineffective for Failing to Request a Richardson Hearing Where the Claim is Controverted by the Record.

In **Claim 7**, Petitioner claims counsel was ineffective for failing to request a *Richardson* hearing upon learning the State committed a discovery violation where the victim told the prosecutor there was another "show up" identification. [ECF No. 1 at 11-12]. The State asserts the claim is refuted by the record because the state informed the court of the new information, defense counsel explained how Petitioner was prejudiced, and the court held a *Richardson* inquiry. [ECF No. 7 at 26-27].  In his Reply, Petitioner contends that the court's remedy to allow an inquiry of

the victim was insufficient because there were questions only the officers involved could answer. [ECF No. 10 at 9-10].

Florida trial courts must hold a *Richardson* hearing upon a possible discovery violation, unless such an error was harmless. *Thomas v. State*, 63 So. 3d 55, 58-59 (Fla. 4th DCA 2011). Here, counsel raised the *Brady* argument just prior to trial upon learning the victim volunteered new information to the State that he was involved in two "show ups." [*Id*. at 3, 5-6]. Counsel filed a motion to suppress, argued prejudice, and sought a continuance. [ECF No. 8-1 at 7-13; *see also* ECF 9-3 at 5-6, 3-16]. The state agreed with the court that the proper remedy was for defense counsel conduct a full inquiry of the victim prior to trial. [ECF No. 9-3 at 16]. Counsel conducted a full inquiry of the victim. [*Id*. at 16-22]. As discussed previously in **Claim 2**, Counsel also conducted a full inquiry of the officers.

Petitioner's claim is controverted by the record and he fails to satisfy either prong of *Strickland*. Moreover, the state court decisions are not contrary to nor an unreasonable application of Supreme Court precedent nor an unreasonable application of the law in light of the evidence presented. **Claim 7** should be DENIED.

### H.  Claim 8 – Counsel Was Not Ineffective for Failing to Object to the Sentence as Vindictive Because Counsel is Not Required to Raise Meritless Objections.

In **Claim 8**, Petitioner claims counsel was ineffective for failing to object to the vindictive sentence imposed by the trial court. [ECF No. 1 at 13]. The court knew Petitioner rejected an eight-year plea offer but sentenced him to 20 years with a 10-year minimum, which was higher than the plea offer, and without explanation for the significant increase. [*Id*.]. The State asserts the sentence was not vindictive because the trial court did not initiate plea discussions, did not depart from the role of impartial arbiter by urging acceptance of a plea or by implying his sentence would be based on procedural choices. [ECF No. 7 at 28]. The state also suggests the sentence was not vindictive

because the sentence was well less than the maximum; and the state court's finding was not contrary to clearly established federal law. [*Id*. at 29].

Judicial or "prosecutorial vindictiveness is based on the principle that a defendant "may not be punished for exercising a protected statutory or constitutional right." *United States v. Gayles*, 406 F. App'x 352, 364 (11th Cir. 2010) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). There are "two ways to prove a claim of vindictiveness. First, a defendant may prove actual vindictiveness by presenting objective evidence that the prosecutor's (or judge's) actions were designed to punish a defendant for asserting his legal rights. Second, in certain circumstances, a defendant may show sufficient facts to give rise to a presumption of vindictiveness." *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008) (citing *Goodwin*, 457 U.S. at 374).

Here, Petitioner provides no objective evidence, nor is there any in the record, that the judge's actions were designed to punish Petitioner for asserting his right to trial. The state court did not insert itself into negotiations and only asked whether a plea had been offered and, when counsel said it was the first time he knew of an offer, the court allotted time for Petitioner to speak with counsel. [ECF No. 9-1 at 30-32]. Petitioner confirmed with the court that he knew about the offer from his prior counsel but wanted to reject the offer knowing he faced a mandatory minimum sentence of ten years and a maximum sentence of life in prison. [ECF No. 9-1 at 33-35]. Counsel argued at sentencing for Petitioner to be sentenced to the mandatory minimum sentence and articulated mitigating factors. [ECF No. 9-7 at 84-91]. The court considered the arguments and sentenced Petitioner to twenty years with a mandatory minimum sentence of ten years and credit for time served. [*Id*. at 92]. Counsel is not required to raise meritless objections.

Ultimately, Petitioner fails to show that the state courts' adjudication of this claim resulted in a decision that is contrary to or involved an unreasonable application of *Strickland* or other

federal law. Nor has he shown that the decision was based on an unreasonable determination of the facts as presented in the state court proceeding. **Claim 8** should be DENIED.

I.    *Claim 9 – Petitioner's Claim that Counsel is Ineffective for Failing to Make an Argument in the Motion to Suppress is Unexhausted and Fails on the Merits.*

In **Claim 9**, Petitioner claims counsel was ineffective for failing to argue in the motion to suppress that police did not follow standardized criteria or procedure in finding the firearm in the trunk of the car. [ECF No. 1 at 14]. The State correctly asserts Petitioner's claim is procedurally barred because the state court determined the claim was time-barred. [ECF No. 7 at 29]. The State is also correct that the claim fails on the merits because the court determined the firearm would have been discovered through the inventory search of the car subsequent to the lawful arrest. [*Id.* at 30]. Petitioner does not address this claim in his Reply. Petitioner's claim fails.

Issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and thereby exhausted prior to their consideration on the merits. *See Anderson v. Harless*, 459 U.S. 4 (1982); *see also Hutchings v. Wainwright*, 715 F.2d 512 (11th Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. *See Leonard v. Wainwright*, 601 F.2d 807 (5th Cir. 1979).

To circumvent the exhaustion requirement, Petitioner must establish that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. § 2254(b)(1)(B); *see also Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). Petitioner makes no such showing here.

Failure to exhaust a claim can result in a procedural default bar in federal court if it is obvious that the unexhausted claim would now be procedurally barred in state court. *See Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). The federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default

doctrine. *Id*. at 1303. However, a petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179-80 (11th Cir. 2010). Here, Florida's two-year statute of limitations to raise claims has long since passed; therefore, any attempt to do so would be futile.

However, there is a narrow non-constitutional equitable exception to excuse the procedural default of claims of ineffective assistance of trial counsel. Relief is available if (1) state procedures make it virtually impossible to actually raise ineffective assistance of trial counsel claims on direct appeal; and (2) the petitioner's state collateral counsel was ineffective for failing to raise ineffective assistance of trial counsel claims in the state proceedings. *See Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1261 n.31 (11th Cir. 2014).

The claim of ineffective assistance must be a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). The exception recognized in *Martinez* applies when a State's procedural framework makes it highly unlikely that a defendant in a typical case will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal. *See Trevino v. Thaler*, 569 U.S. 413, 429 (2013).

Petitioner did not raise this claim on direct appeal. On April 23, 2014, approximately 14 months after Petitioner's conviction became final, post-conviction counsel entered his appearance in Petitioner's case. (*See* underlying criminal trial docket DE#340). On February 18, 2016, more than three years after Petitioner's conviction became final, post-conviction counsel filed a supplemental Rule 3.850 motion, raising the instant claim. [ECF No. 8-1 at 212-234]. The state court denied the claim as untimely. [ECF No. 8-3 at 108-109]. Petitioner did not raise the claim

on direct appeal of the Rule 3.850 motion. Petitioner seems to agree that the claim is unexhausted but that post-conviction counsel failed to assert the claim on appeal of the denial of the 3.850. [ECF No. 1 at 14].

Petitioner's claim is unexhausted and procedurally barred. Still, even if Petitioner could overcome the procedural bar, he cannot demonstrate that the claim has some merit. In arguments supporting the motion to suppress, counsel argued that all of the items seized from the car should be suppressed, including the firearm found in the trunk. The trial court found that the firearm would have been admissible and found pursuant to inevitable discovery following an inventory search. Accordingly, counsel was not deficient; and Petitioner was not prejudiced.

The state courts' adjudication of this claim resulted in a decision that is contrary to or involved an unreasonable application of *Strickland* or other federal law. Nor was the courts' decision was based on an unreasonable determination of the facts as presented in the state court proceeding. **Claim 9** should be DENIED.

## VII.    Evidentiary Hearing

Based upon the above, any request by Petitioner for an evidentiary hearing on the merits of any or all of his claims should be denied since the habeas petition can be resolved by reference to the state court record. *See* 28 U.S.C. § 2254(e)(2); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (holding that if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing); *see also Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his

claim."). Petitioner has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

## VIII.    Certificate of Appealability

A petitioner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a Certificate of Appealability ("COA") to do so. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009).

This Court should issue a COA only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Alternatively, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

After review of the record, Petitioner is not entitled to a COA. Nevertheless, as now provided by the Rules Governing § 2254 Proceedings, R. 11(a): "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in the objections permitted to this report and recommendation.

## IX.    Recommendations

Based upon the above, it is recommended that the Petition for Writ of Habeas Corpus [ECF No. 1] be DENIED, that no Certificate of Appealability issue, and that the case be CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to do so will bar a de novo determination by the District Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn*, 474 U.S. 140, 148-53 (1985).

SIGNED this 18th day of February, 2021.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    Carlos Elton Robinson
       W40282
       Martin Correctional Institution
       Inmate Mail/Parcels
       1150 SW Allapattah Road
       Indiantown, FL 34956
       PRO SE

       Melanie Dale Surber
       Attorney General's Office
       1515 N. Flagler Drive, 9th Floor
       West Palm Beach, FL 33401-3432
       561-837-5000
       Fax: 837-5099
       Email: crimappwpb@myfloridalegal.com